Scott Schorr in the Rausch case. We've discussed the initial application argument, so I'm not going to discuss that in this case unless the court has questions. The primary issue that I believe is raised in this case is the issue of who takes the adverse action, whether Hartford Fire itself took an adverse action against the appellant Jason Reynolds. Is this one of the cases, if I recall, three out of the five raise willful and two don't. Do you know what a willful is raised as an issue in Rausch? I know that the appellees raised it as an alternative argument for affirmance in this case, and if you'd like me to address that issue, I can start there. Has the district court ever addressed the willfulness in any of the cases? The district court never addressed the willfulness issue in any of the cases. The district court ruled either on the proper party basis or the initial application basis in every case. And we think it's appropriate for the district court at the very least to address this question first, because willfulness typically isn't resolved on summary judgment. It's a question of motive and intent, and the district court gave no guidance and never even considered the issue and went right to the proper party in the initial application issue. And this would be a bench trial for a trial, is that right? You know, I don't know the answer to that. It's a jury trial, Your Honor. I'm informed by co-counsel. Even though it's statutory? Correct, Your Honor. Is the standard for willfulness clear? I understand that you may have disagreements with the fact, but is the legal standard clear here? Respectfully, I don't believe that it's entirely clear. There's certainly been no controlling authority for this court to decide whether willfulness means knowing intentional conduct or a more typical standard of knowing a reckless conduct in contravention of the statute. There have been a number of cases going both ways at the district court level and throughout the nation, but no controlling authority for this court. We think that the correct standard has been applied by a number of district courts within the Ninth Circuit that holds that the willfulness standards are knowing a reckless disregard for the consumer's rights. With respect to this ‑‑ Is that a question that we need to answer in this case? It's a question that someone may eventually need to answer. It's not clear that. It's optional. If your opponents are arguing that that is an alternative basis for upholding the summary judgment order and we decided to reach that question, it would be required to answer. I don't think we're compelled to consider alternative grounds. We can sometimes say we'd rather have the district court consider it first, but we're certainly free to reach that because it is a legitimate ultimate ground for affirming the order. Absolutely, Your Honor. Maybe I misunderstood the question, but to the extent it's optional, it's optional. But the court has discretion to consider alternative arguments for affirmance or not. We believe that this ‑‑ Were there cross motions for summary judgment or just motions by defendants? There were just motions by defendants. The plaintiffs did not affirmatively move. If we were to reverse on the other issues, we don't reach willfulness unless we reverse on other issues, right? Correct, Your Honor. If we reverse on those issues, then it's going back anyway either for another summary judgment proceeding or for a trial. Correct, Your Honor. If defendants raise the willfulness argument again in summary judgment? It wouldn't go back if we affirmed the summary judgment order on the basis of willfulness. In certain cases, that's correct, Your Honor. Willfulness does not arise in all the cases, but to the extent the court decides to address the issue and if it affirms based on willfulness, which alternatively affirms, some of those cases would not go back. Summary judgment motion wasn't part of the willfulness ground in the cases in which it was raised. In other words, the argument was made below. Yeah, we're not contending that it wasn't at least preserved and raised in certain cases as an alternative argument for affirmance, but the district court never addressed it in any of the cases. The defendants with respect to willfulness argue that there must be guidance from a controlling court, essentially, on the terms of the statute or they can't be in willful violation of the statute. There are no cases that say that in the first instance. Second, we think the statutory terms are clear in this instance and they don't need further guidance and that the defendants were on notice. And if you look at each of the cases, there is evidence in the record that the defendants were aware that the FTC staff, at least, was taking the position that they were not, that an increase in an initial premium was an adverse action. With respect to this particular case on the issue of willfulness, there is an internal memo in the record. This is one of the exhibits I brought with me today, but it's from the Clerk's Record 112. It's Exhibit 33, Page 2, to the Affidavit of Steve Berman in support of plaintiff's response to the summary judgment motion. And in November 2000, Hartford Fire had an internal memorandum that said, insurance companies are also required to send adverse action notices, meaning when an applicant does not get the best rate due to consumer reports under the Federal Fair Credit Reporting Act. So if the district court were to have considered this issue in the first place, we think there's at least a clear, disputed, factual issue that the Hartford Fire understood that not getting the best rate or having an increase on the initial premium was clearly something that was covered by the clear terms of the statute. So for that reason, I don't think if this Court decides to address the willfulness issue, it should either return, or if it decides to address the willfulness issue, there's a disputed issue of fact that the defendant knew that there was a violation of the statute. At the very least, the defendant was also reckless about the consumer's rights with respect to the violation of the statute. Is there anything in the record in this case or any other as to why the insurance company made the decision that it did? In other words, what the reasons were for not giving the notice? In one of the records, I remember something about postage. Is there anything anywhere else about why they chose not to give the notice? You know, I'm running through all the cases. I don't have it handy, but there was evidence in the record with respect to that one instance where they were talking about the cost of sending out more notices. I guess we haven't. We primarily are here, I guess, to discuss which parties you believe are liable. We're getting close to the end of your time, and we haven't gotten to that yet. Yes. The primary reason I am here is to address whether Hartford Fire itself took the adverse action. And we did not pursue Hartford Fire because it was the corporate parent. We pursued Hartford Fire because we believe that it is the company that takes the adverse action by setting the premium rates in the subsidiary companies and then directing the applicant to the subsidiary company, which is determinative of the price. The increase in the charge for insurance occurs at the very least when the applicant is shuttled to the more expensive insurance company by Hartford Fire. And the facts in this case are Hartford Fire has all the employees, and they're located in one central operation unit that does the underwriting risk assessment. Does the issuing company have any authority to not follow whatever decision Hartford Fire makes? There are certain cases where there are back-end veto rights, but there is no evidence in the record that an issuing company ever rejected anyone that was sent to them or said that wasn't the proper underwriting. The evidence in the record is that the issuing company takes the action and the consumer is shuttled to that company. There's no evidence that the consumer is ever rejected from that company. Is it your position that more than one notice has to be sent? No, and I think that's a red herring issue, Your Honor. Only one notice is required. The issue is if a party takes the adverse action, they should be listed on that one notice. If it happens that it's more than one party, the company can list all the parties that took the adverse action. Is it your position that the issuing company also took an adverse action or only the one that determines the underwriting? Well, we think both took the adverse action. Initially, we believe that it was the operating company, the company that creates the efficiency and sets up the system that has all the employees. Judge Brown then concluded that that company, as a matter of law, by the way, not based on the facts, could not take the adverse action, and only the contracting company could take the action. So we're in a position. Does this matter? As long as there's one company that is responsible for the notice, is there any utility in having more than one responsible for the notice? Well, the important aspect is the notice, Your Honor. But the question is, based on the statute, did Hartford Fire fill out, are the facts that Hartford Fire meets all the elements for having to give the notice under the statute? So anyone who took the adverse action under the clear terms of the statute is responsible for giving notice. Let me ask you practically. You're not seeking a double recovery, are you? Well, I don't think the Court has to address that question. No, we may not have to address it. I'm just trying to find out what you're seeking. Are you seeking a penalty against each company, or is it a joint penalty against the two? It may be, although we're not reaching that, it may be that we seek joint sever liability under the separate damages section of the statute, which isn't directly before Your Honor. And do you care? You say you could list all the companies on the notice. What difference does it make whether you list one company or three companies? What matters to the consumer is not who sent him the notice, but that he gets the information. I agree, except the notice purpose is served that way, but also the statute requires that whoever takes the adverse action based on the elements of the statute must give that notice. Well, maybe the person could say that the notice has already been given by our affiliated company. It makes no sense to send two notices. Would he then be in violation of the statute, of the second company, even if the first one had sent a notice? If that company did not give notice, and all that company has to do is put itself on the notice, and in fact the record in a number of these cases is they list several companies. When they try to give purported notice, there was improper notice in a couple of these cases, but they list the companies that were involved in taking the adverse action, and that's all that the company has to do is put itself on the notice. I guess what I'm struggling with and perhaps my colleagues is, is this issue an artifact of who you happen to sue in these particular cases, or does it matter in any practical way? In other words, if we came up with a rule that said that the issuing company is the one that should give the notice, and it must give the notice, no matter whether it made the decision or not, from the point of view of the statute leaving aside these particular lawsuits, would all the purposes of the statute be served? If, well, maybe not. If the issuing company doesn't have any employees, and you're directed to the issuing company, how are you going to follow up with them because they don't have any employees? In fact, who you'd call is the overarching company that has all the employees. So it's important that the notice come from the right person. All right. So what you're saying is if you, the follow-up in the statute, as I understand it, is really contemplated by the statute, is really with the credit reporting company, not with the insurance company. Is that not right? Well, that's correct. And the consumer is essentially dealing with the agent, I guess, who is an agent. It's quite complicated, but purports at least to be an agent for an issuing company, maybe more than one issuing company. So they're going to interface with the agent. They're not actually going to interface with any of the companies behind the agent. Well, it may be that an agent or it may be a person at a call center that's employed by Hartford Fire. Eventually you're going to have to deal with the appropriate company if you want to contest that the information was wrong and that the insurance company that took the adverse action shouldn't have taken that action. And that's why it's important to be directed to the appropriate company. I think I've gone far over my time. All right. Thank you, counsel. Thank you, Your Honor. If it please the Court, there are two issues that I intend to specifically refer to in the absence of direction from the Court, and they would be both the willfulness issue and the proper party issue. I'll start briefly on the willfulness issue first, if I may. The plaintiff, Reynolds, could not prove actual damages and chose to assert a claim based on negligence. So they didn't choose to assert a claim based on negligence. They put all their eggs in the basket of willfulness. Isn't that because that's what the statute requires? No. There is an alternative relief. They can sue either for negligence and get actual damages, or they can sue for willfulness and get statutory damages. And they have elected to try and prove willfulness. And as a matter of law, we believe that they can't do it under the facts of the individual case that we're talking about. Do you disagree with the legal test for willfulness that your opponent suggested? I believe that there is a standard, both in the Eighth and Fifth Circuits and FCA cases, they have applied a criminal standard, a knowing, intentional standard. So you would not include willful disregard or reckless disregard? I would not. Nor do I think there's any evidence in this record to suggest that there was. I'm not talking about that. I'm first just trying to get the standard. That is not an uncommon test, the knowing or reckless disregard for willfulness. But you would not apply it? I would not. The majority of the courts, we believe, have taken the position that violations of law involving issues of first impression cannot constitute willful violations. And even the Federal Trade Commission, in its brief and argument here today, has indicated that the initial premium issue is a matter of first appellate opinion. And we think, as a matter of first impression, this case does not qualify for possible willfulness. In addition, there is a very short quote from the Fair Credit Reporting by the National Consumers publication that says, The FCRA is so poorly drafted and difficult to understand that courts are sometimes in disagreement over some fundamental questions. You should have been here yesterday. This is a very simple statute. Our position is that surely the Hartford should not be exposed to possibly ruinous and destructive statutory penalties based on a new and strained interpretation of the Fair Credit Reporting Act, which Reynolds admits is only supported by the Federal Trade Commission's commentary. Now, Reynolds does not admit that the statute is ambiguous, and it can't because of the willfulness argument. But the FTC does make that admission in their materials. In addition, we believe that there is clearly before the court the fact that the insurance company tried to do the right thing and that we were not held to a standard of perfection. So even if the Ninth Circuit found that we had done something wrong, we don't think we did, that under these circumstances there should be a right to be wrong where it is a first impression without controlling authority and that we should not be penalized with literally potentially billions of dollars of exposure and statutory damages from a statute that the trial judge has interpreted the same reasonable way that we have. I would now move to proper parties in the absence of questions related to willfulness. It's our position that the plaintiffs got exactly what they wanted, and that was a lawsuit against two companies, neither of which issued a policy. They originally sued the Hartford Financial Services, the holding company that isn't even an insurance company. Couldn't write a policy of insurance if it wanted to. And the Hartford Fire, the other defendant, is an insurance company but is not even authorized to write insurance in the state of Oregon and couldn't write the policy if they wanted to. This is not a situation where the plaintiffs did not know who issued the policy. The policies were issued. They had them. They could read them. They saw and knew that it was the Hartford ---- But is it your position that the issuing company is always the proper defendant, no matter what else may be the case? That's right. And no matter whether the insurance company, the issuing company has any authority at all with regard to making any underwriting decisions? That's correct. And we think there's one notice, and we think that it is not at all uncommon for the issuing company to operate in part through affiliates and related separate legal corporations who may, for purposes of underwriting, be assisting in some form, but that ultimately the responsibility, if they've done something wrong, and we don't think anything was done wrong here, but it would be on the issuing company, not on some other company. And who's the issuing company here? The issuing company here on the automobile policy for the Hartford was the Hartford Insurance Company of the Midwest. For the other policy, which was a tenant's policy, a rental-type policy, that was Hartford Property and Casualty Insurance Company. And so there was also a motion to amend in this case to add the people that you were now saying were a proper defendant. Yes, a very late motion. I'm sorry? A very late motion. Yes, but the basic issues that were litigated would have pertained anyway, and the district court denied it on the ground that it was futile because of her legal ruling with regard to the adverse action. So we, and there is a question before us on the amendment question. Is that right? It is in the briefs. We believe the judge was correct. It is not being argued. It would be either correct or not correct depending on how we ruled on the adverse action question. If we were to reverse on the adverse action question, it would be incorrect. I'll let the plaintiffs speak to whether they have waived any appeal on that point. But it's my understanding that that is an issue. Now, let's assume that the issuer and the parent or whoever it is that really sets the rates or determines which company you go to in some cases or what, in effect, what your rate will be. Let's assume they were both deemed to be parties that had an obligation. Would you consider that each had to send a notice or just one? I believe that the purpose is one notice and that Congress didn't intend for multiple notices, and it would be both administratively, mechanically and financially very difficult. Nobody's asking for multiple notices. The question is, what would be the burden? Would there be a burden if you had to put more names on the same notice? If you send one notice, it would not be much of a burden to identify. Is it not under the statute who the notice comes from as long as one of the companies sends it? I believe the statute's clear, and it says that the person taking adverse action, and we believe only one can take adverse action. Well, let's assume two can take it. Is there a purpose in the statute to putting both names on rather than just one? Not that I can see, Your Honor. The purpose is really to give the consumer the opportunity to double-check the credit report to see if it has any inaccuracies, and we think the law is now presently very well designed to make that possible and that consumer rights have been protected. Presumably, then, to come back to the insurance company if there were a mistake and to say, look, this has been corrected, now we reconsider your decision. So the question is, who do they go back to at that point? To the issuing company. Well, in fact, they go back to an agent who's, in fact, dealing for a set of companies usually. Is that not right? And it varies within here. We have some captive companies who only write through agents that only write for them. Hartford is one that writes to independent brokers to where they might be licensed to write for 200 different companies, and Hartford would merely be one of them. And in the state of Oregon, only the one would be able to write the auto policy and only one would be able to write the tenant's policy. And neither of those have been sued. But if somebody wanted to communicate with the person who actually made the decision and who might be able to change it, the only way to do that would be to know who the person was who made the or who the company was who made the decision and could reverse it. I believe that the issuing company would be the source to trace that down and get the response. Does the issuing company have any authority to reject what Hartford Fire decides? I'm underwriting. When you say authority, I suppose if there were an error and it was misdirected to a company that was not authorized to do business in the state, that they could reject it and they would have to point out to the parent that they had made some administrative error. If they got a response that said this person should be charged X amount of money, that's what they charged. That's my understanding. Counsel, on the single notice question, are you concerned that if you didn't list all of the companies that had a hand in the decision, either the company that was looking at the credit report and issuing the rate or the actual issuing subsidiary, that that company might be exposed to liability down the road? Is there a reason not to put everybody on the notice? I would say the reason is the language in the statute and that it only requires the one notice by the person taking, and we think that would be the issuing company. As a practical matter, the parent company, when they act for, in this instance, Hartford Insurance Company in the Midwest, the individual working for Hartford Fire would, while acting for Hartford Insurance Company in the Midwest, be the agent and designated person for Hartford Insurance Company in the Midwest. And during one day, that same person might deal in numerous states for different companies. But I believe that the easy, clean, clear, and called for by the FCRA provision would be one notice, the issuing company. And that would satisfy the obligation. If you got one from Hartford Midwest, that would satisfy any obligation that Hartford Fire had as well? Yes. My red lights on. I'll be pleased to respond to further questions or sit down. Thank you. Thank you very much. Is this your last case? OK, well, maybe we can give you another minute now. Take it out of your last. Just a couple of quick points, Your Honor. You have raised the question of the amendment. Yeah, that's one of the issues I wanted to direct. We appealed the denial of the motion to amend. The only basis for the denial of the motion to amend was the futility issue because the district court ruled that the issuing, excuse me, that there was no increase. Really, all we could do is if we were to reverse on the merits, we would reverse on that because that was the reason she gave. She might give another reason. She could then have the issue open and she would decide what to do. Correct, Your Honor. The other point I came up here to make is that my co-counsel reminded me that the district court actually has decided a willfulness issue in the Mark v. Valley Insurance case, which isn't up on appeal, but the district court denied a motion for summary judgment on the willfulness issue, saying it was a fact issue. The district court didn't directly conclude whether it was knowing or reckless, but the court, at least in that case, said, based on those facts, that the conduct at least raised a summary judgment issue either under the knowing or reckless standard. Unless the court has questions. I see my time is about up. Thank you. Thank you, Your Honor. The next case is Willis v. State Farm. May it please the Court.
judges: Reinhardt, Berzon, Bybee